FILED

August 24, 2016

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 7:30 A.M.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Thomas Gilbert | ) | Docket No.   2016-06-0832 |
| | ) | |
| v. | ) | State File No. 33590-2016 |
| | ) | |
| United Parcel Service, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Kenneth M. Switzer, Chief Judge | ) | |

---

### Affirmed and Remanded-Filed August 24, 2016

---

The employee appeals the trial court's interlocutory order denying temporary disability benefits and its determination not to assess penalties. The employee suffered a compensable traumatic left knee injury in 2011. The claim was resolved and a court-approved settlement provided the employee future medical treatment for the injury. The employee alleges suffering a new work-related cumulative trauma injury to his left knee, for which he seeks medical benefits, temporary disability benefits, and penalties. The parties disagreed whether the most recent complaints are causally related to the employment and, if they are, whether a new cumulative trauma injury occurred. Following an expedited hearing, the trial court determined the employee presented sufficient evidence that he is likely to succeed in establishing at a trial on the merits that he suffered a new injury. However, the trial court denied temporary disability benefits and declined the employee's request to impose penalties, finding that the employee did not present sufficient evidence that he is entitled to temporary disability benefits and did not satisfy the criteria for any applicable penalties to be imposed on the employer. The employee has appealed. After a careful review of the record, we affirm the trial court's decision and remand the case for further proceedings as may be necessary.

Judge David F. Hensley delivered the opinion of the Appeals Board, in which Judge Marshall L. Davidson, III, and Judge Timothy W. Conner joined.

Constance Mann, Franklin, Tennessee, for the employee-appellant, Thomas Gilbert

David Hooper, Nashville, Tennessee, for the employer-appellee, United Parcel Service

1

**Factual and Procedural Background**

Thomas Gilbert ("Employee") is a fifty-five-year-old resident of Williamson County, Tennessee, and has been employed by United Parcel Service ("Employer") as a delivery driver for approximately sixteen years.[1] Employee alleged that in April or May 2015, he began experiencing left knee symptoms that he attributed to climbing in and out of Employer's delivery truck many times a day during his work week. He previously suffered a work-related left knee injury in 2011 and underwent surgery on August 3, 2011, which included arthroscopic partial medial meniscectomy, arthroscopic chondroplasty of the patella, and arthroscopic chondroplasty of the medial femoral condyle. The 2011 left knee claim was resolved, and on February 3, 2012, the Maury County Circuit Court approved the settlement agreement, which obligated Employer "to provide future medical care attributable to [the left knee] injury with Dr. [David] Moore, pursuant to the applicable statute." Employee continued treating with Dr. Moore, seeing him on four occasions in 2012. On the last of these visits in December 2012, Employee had returned to normal activities, but he reported pain and worsening symptoms for which he received a repeat corticosteroid injection. The report of the December 2012 visit includes the following:

> [Employee] continues to work through his left-sided knee pain. . . . As it does appear that his corticosteroid injections are no longer working for the several months that they were previously, I would recommend considering a repeat viscosupplementation series. If he does have persisting pain over the upcoming months, I would recommend proceeding with a Synvisc series. Otherwise, I would be happy to see [Employee] back in the future should he have any further difficulties. We can continue to repeat his corticosteroid injections every four to six months if necessary.

Approximately two and one-half years later, Employee returned to Dr. Moore on July 23, 2015 with complaints of left knee pain and swelling "that has been getting worse over the last three months." X-rays were interpreted as demonstrating medial compartment osteoarthritis, which the report stated "is a significant change when compared to the x-rays that were taken last back in 2012." Dr. Moore thought that Employee's osteoarthritis had been aggravated and opined "the progression of [Employee's] medial compartment osteoarthritis is directly related to his medial meniscus tear that was caused by his initial work-related injury in May of 2011." Dr. Moore aspirated fluid from Employee's left knee and injected it with Decadron and lidocaine. He recommended proceeding with viscosupplementation injections and seeing Employee "after the third injection in the series."

---

[1] No transcript or statement of the evidence has been submitted. Thus, we have gleaned the relevant facts from the trial court's expedited hearing order and the exhibits admitted into evidence at the expedited hearing.

Employee returned to Dr. Moore's office on October 20, 2015, and was seen by a nurse practitioner. The report of that visit noted that Employee was "requesting another steroid injection and possible aspiration as his knee is swollen." The report stated that at the last visit Dr. Moore wanted Employee to be approved for injections "and at that time it was denied." Employee requested that the injections be reconsidered.

On January 7, 2016, Employee was seen again by Dr. Moore with continuing complaints of left knee problems. The office note stated that Employee developed "pain, swelling, instability, and stiffness with no recent injury," and it noted that he has recently completed a series of injections. After reviewing additional x-rays that demonstrated progression of Employee's osteoarthritis, Dr. Moore stated that Employee "is now to the point where he, unfortunately, is bone-on-bone," and that Employee's "only remaining treatment option would be to consider a total knee arthroplasty." For that surgery, Dr. Moore referred Employee to Dr. Gregory Raab, a physician in practice with Dr. Moore who performs knee replacement surgeries. Finally, Dr. Moore stated the following in the January 7, 2016 report:

My impression is that his knee [sic] for a total knee arthroplasty is directly related to his meniscal injury. He has essentially no osteoarthritis to his contralateral right knee where he has not experienced a meniscal tear. I would certainly be happy to see [Employee] back in the future for additional injection therapy, although unfortunately, I believe his arthritis has progressed to the point where his best treatment option would be to consider a total knee arthroplasty.

Employee saw Dr. Raab on April 22, 2016, at which time Dr. Raab noted Employee had experienced problems after an injury to his knee "years ago . . . and over the last several months he has had significant increase in his symptoms with pain worsening." The record indicates Employee reported finding his problems particularly challenging with respect to his work duties and that he was experiencing increasing frustration with his limitations, both at work and recreationally. Dr. Raab observed Employee's osteoarthritis had "progressed even over the last six months to the point where he has been bone-on-bone" and recommended a total knee replacement. On April 26, 2016, Employer's attorney sent a letter to Drs. Moore and Raab asking two questions regarding causation. Dr. Moore responded affirmatively to the question asking whether Employee "sustained an aggravation of his specific left injury as a result of repetitive climbing into the truck during his job as a UPS driver," commenting that "[h]is meniscal tear on this side likely led to progression of his [osteoarthritis]." In addition, Dr. Moore answered "yes" in response to a question asking whether the aggravation was "at least 51 percent cause of [Employee's] current need for knee replacement." Upon learning of Dr. Moore's responses, Employee telephoned the manager of Employer's Franklin Center facility on May 2, 2016, advising that he suffered a new, cumulative trauma injury.

3

Employee filed a petition for benefit determination on May 5, 2016, seeking medical and temporary disability benefits.

On the morning of May 6, 2016, Employee's supervisor observed Employee limping and asked him what was wrong. According to the supervisor's affidavit, Employee responded that "he could not go anymore." After consulting with the facility manager, Employee was asked to clock out and go home. Employee has not worked since May 6, 2016.

Employer processed Dr. Raab's request for total knee replacement through its utilization review provider, and on May 5, 2016, the surgery was certified as medically necessary. Employer approved the knee replacement surgery as being reasonable and necessary as a result of the 2011 injury, and surgery was scheduled for July 12, 2016. However, on June 10, 2016, Employee cancelled the procedure for "legal reasons" and filed a request for expedited hearing.

The trial court determined Employee presented "sufficient evidence . . . that he is likely to prevail at a hearing on the merits regarding the compensability of his claim." Noting that the parties agreed that Employee "is entitled to medical benefits (the total knee replacement), whether it be pursuant to the settlement agreement of 2012 or this case," the trial court concluded that Dr. Moore should remain the authorized treating physician and that "his referral to Dr. Raab for the surgical procedure is approved and for that purpose." However, the trial court denied Employee's request for temporary disability benefits "because neither Dr. Moore nor Dr. Raab restricted or removed [Employee] from work."

Finally, due to the trial court's finding that Employee "failed to satisfy his burden" to establish entitlement to temporary disability benefits, the trial court rejected Employee's claims for penalties under Tennessee Code Annotated sections 50-6-205(b)(3)(A) and 50-8-118(d). The trial court also denied Employee's claim for attorney's fees for Employer's failure to furnish appropriate medical care, noting that Employer "did, in fact, authorize the requested medical treatment under the previous settlement." Employee has appealed the trial court's denial of temporary disability benefits and its determination not to assess penalties.

**Standard of Review**

The standard we apply in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2015). The trial court's decision must be upheld unless the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A)     Violate constitutional or statutory provisions;

(B)     Exceed the statutory authority of the workers' compensation judge;

(C)     Do not comply with lawful procedure;

(D)     Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion; or

(E)     Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

## Analysis

Employee identified three issues in the notice of appeal: (1) whether he is entitled to temporary disability benefits from May 6, 2016; (2) whether he is entitled to recover a 25% penalty for Employer's failure to provide temporary disability benefits; and (3) whether Employer is responsible for a "25% [p]enalty for failure to authorize surgery pursuant to order and attorney fees." However, in his brief on appeal, Employee identifies and argues a single issue, namely, "[w]hether an injured worker is entitled to temporary disability, when the employer determines he cannot work as a result of his injury." In the concluding paragraph of his brief on appeal, Employee asserts that he "simply didn't receive penalties, because temporary disability was not awarded," and for that reason Employee "also asks the Appeals Board to revisit the penalties requested." For the reasons that follow, we affirm the trial court's denial of the requested temporary disability benefits, which pretermits any issue of penalties.[2]

The appealing party has the burden to ensure that an adequate record is prepared on appeal. *Vulcan Materials Co. v. Watson*, No. M2003-00975-WC-R3-CV, 2004 Tenn. LEXIS 451, at *6 (Tenn. Workers' Comp. Panel May 19, 2004). *See also Jernigan v. Hunter*, No. M2013-01860-COA-R3-CV, 2014 Tenn. App. LEXIS 617, at *5 (Tenn. Ct. App. Sept. 30, 2014) ("It is the duty of the appellant to prepare a record which conveys a fair, accurate, and complete account of what has transpired in the trial court with respect to the issues that form the basis of the appeal."). As explained by the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel,

---

[2] The trial court determined that "under certain circumstances," it has statutory authority to assess penalties "authorized by the Workers' Compensation Law." Because the trial court determined that Employee "failed to satisfy his burden regarding the criteria for temporary disability benefits," the trial court rejected Employee's claim for penalties "under Tennessee Code Annotated section 50-6-205(b)(3)(A) (2015) or 50-6-118(d) (2015)." Having determined that any issue of penalties is pretermitted, it is unnecessary to address the scope of a trial court's authority to assess statutory penalties.

[t]he appellant has the duty of preparing a record that conveys a fair, accurate and complete account of the proceedings in the trial court with respect to the issues on appeal. We are provided with only the trial court's findings of facts and conclusions of law rendered from the bench and the exhibits introduced at the trial of this cause, which include three doctor's depositions. We do not have a record of the lay testimony presented to the trial court. In the absence of an adequate record on appeal, this Court must presume the trial court's rulings were supported by sufficient evidence.

*Vulcan Materials Co.*, 2004 Tenn. LEXIS 451, at *6-7 (citation omitted).

Moreover, including a transcript or statement of the evidence as part of the record on appeal promotes meaningful appellate review and, in turn, public confidence in the integrity and fairness of the process. As one court has observed, "[f]ull appellate consideration of a trial court's determination . . . is part of the process designed to achieve an accurate and just decision . . . ." *In re Adoption of J.D.W.*, No. M2000-00151-COA-R3-CV, 2000 Tenn. App. LEXIS 546, at *12 (Tenn. Ct. App. Aug. 16, 2000). As we have previously noted, "[w]ithout a transcript or a statement of the evidence, the appellate court cannot know what evidence was presented to the trial court, and there is no means by which we can evaluate the appellant's assertion that the evidence did not support the trial court's decision." *Britt v. Chambers*, No. W2006-00061-COA-R3-CV, 2007 Tenn. App. LEXIS 38, at *8 (Tenn. Ct. App. Jan. 25, 2007). Accordingly, "it is essential that the appellate court be provided with a transcript of the trial proceedings or a statement of the evidence . . . ." *Id.* at 7. While we have observed that filing a transcript or a statement of the evidence is not mandatory, *Navyac v. Universal Health Services*, No. 2015-06-0677, 2016 TN Wrk. Comp. App. Bd. LEXIS 17, at *5 (Tenn. Workers' Comp. App. Bd. Mar. 31, 2016), an appellant who chooses not to file one or the other does so at his peril.

In his request for an expedited hearing, Employee requested the trial court convene an evidentiary hearing, stating that "detailed testimony as to the complete recovery, activity level, and onset and causation of pain are necessary for this Court to form a complete picture of the facts surrounding a new injury." In rendering its decision concerning Employee's request for temporary disability benefits, the trial court had the benefit of the testimony presented at the expedited hearing. We do not. While Employee asserts on appeal that a transcript is unnecessary because he is relying on the affidavit of Employer's representative,[3] we respectfully disagree. In an appeal involving fact-driven issues, a decision cannot be rendered based upon a single document without also considering the totality of the evidence presented at the hearing, including witness

---

[3] Employee filed a "Motion to Excuse the Trial Transcript," which we denied as moot on July 26, 2016 because there is no filing requirement to waive. *See* Tenn. Comp. R. & Regs. 0800-02-22-.02(2) (2015); *Navyac*, 2016 TN Wrk. Comp. App. Bd. LEXIS 17, at *5 ("[T]he pertinent regulations are clear that both the filing of a transcript and the filing of a statement of the evidence are permissive, not mandatory.").

testimony. In those cases involving a factual dispute, we would be remiss to reach a decision addressing the preponderance of the evidence based upon a single document identified by one party. Rather, we consider the record as a whole in determining whether the trial court's factual findings and conclusions are correct. Moreover, Tennessee Code Annotated section 50-6-239(c)(7) (2015) provides a presumption "that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Without the benefit of all of the evidence, we simply cannot make that determination.

Here, the trial court concluded that it could not order temporary disability benefits because there was no medical proof that Employee was restricted from work or removed from work such that he was "disabled from working due to a compensable injury." Recognizing the absence of such medical proof in the record, Employee asserts in his brief on appeal that "[t]he issue is whether [Employer] must pay temporary disability when they, themselves, determined he was disabled." Employee asserts that when he was directed to clock out and go home on May 6, 2016, "[h]e was limping profusely and deemed unable to work by both his supervisor and the UPS manager." The supervisor's affidavit does not support Employee's assertion. In the affidavit, the supervisor stated that Employee was limping and when he asked Employee what was wrong Employee responded "he could not go anymore." Based upon Employee's response, the supervisor told Employee that he "could not allow him to go out on his route that day, and had him clock out and go home." In addressing this issue, the trial court noted Employee's argument that "since [Employer] knew his current circumstance and removed him from work for liability reasons, they should pay him temporary disability benefits." Without addressing whether medical evidence is required to establish temporary disability, we conclude that it cannot be determined from the supervisor's affidavit or the record as a whole that Employer determined Employee was disabled or deemed unable to work as Employee asserts.

Furthermore, when the trial court has seen and heard the witnesses, considerable deference must be afforded the trial court's factual findings. *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008). While a party can choose not to file a transcript or statement of the evidence, such a decision can significantly hinder appellate review. Here, the trial court determined Employee had not presented sufficient evidence that he is likely to succeed at a trial on the merits in establishing he is entitled to temporary disability benefits. Without a transcript or statement of the evidence, the totality of the evidence introduced in the trial court is unknown, and we decline to speculate as to the nature and extent of the proof presented to the trial court. Instead, consistent with established Tennessee law, we presume that the trial court's ruling was supported by sufficient evidence. *See Leek v. Powell*, 884 S.W.2d 118, 121 (Tenn. Ct. App. 1994) ("In the absence of a transcript or a statement of the evidence, we must conclusively presume that every fact admissible under the pleadings was found or should have been found favorably to the appellee.").

## Conclusion

We hold that the evidence does not preponderate against the trial court's decision to deny temporary disability benefits at this interlocutory stage of the case. Additionally, we hold that the trial court's decision does not violate any of the standards set forth in Tennessee Code Annotated section 50-6-217(a)(3). Accordingly, the trial court's decision is affirmed and the case is remanded for any further proceedings that may be necessary.

David F. Hensley, Judge
Workers' Compensation Appeals Board

**FILED**

**August 24, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 7:30 A.M.**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Thomas Gilbert | ) | Docket No. 2016-06-0832 |
| | ) | |
| v. | ) | State File No. 33590-2016 |
| | ) | |
| United Parcel Service, Inc., et al. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 24th day of August, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| **Constance Mann** | | | | | X | cmannlaw@msn.com |
| **David Hooper** | | | | | X | dhooper@hooperzinn.com |
| **Kenneth M. Switzer, Chief Judge** | | | | | X | Via Electronic Mail |
| **Penny Shrum, Clerk, Court of Workers' Compensation Claims** | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov